UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| BARRY ARNOLD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Case No. |
| v. ) | 5:14-CV-97-JMH |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL ) | **AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*

This matter is before the Court upon cross-motions for Summary Judgment [DE 12, 13] on Plaintiff's appeal of the Commissioner's denial of her application for disability insurance benefits. [Tr. 8-21].[1] The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

> 1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.
>
> 2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

> 3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
> 4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
> 5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 14]. Under step two, the ALJ found that Plaintiff's intermittent explosive disorder, mild visual disturbances due to photosensitivity, status-post

2

myocardial infarctions, and history of substance abuse were "severe" as defined by the agency's regulations. [Tr. 14]; 20 CFR § 416.920(c).

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 14-16]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> He has a good ability to follow work rules. He has a fair ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, and deal with work stresses. He has a good ability to function independently. He has a fair to good ability to maintain attention and concentration, and make performance adjustments, understand, remember, and carry out complex job instructions. He has a good ability to understand, remember, and carry out detailed but not complex job instructions and simple instructions. He has [sic] good ability to maintain his personal appearance. He has a fair ability to behave in an emotionally stable manner, to relate predictably in social situations, and demonstrate reliability. He would work best in a non-public setting, and would not work well with large numbers of people such as customer service jobs. His job would be performed best in a casual, non-confrontational work setting. The claimant's mild visual disturbance due to photosensitivity will still allow the claimant to work in indoor settings with controlled light, but he should avoid prolonged exposure to bright sunlight. [Tr. 16].

The ALJ found that Plaintiff was able to perform his past relevant work as a material handler and machine operator. [Tr.

3

22]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 23].

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

## III. Background

Plaintiff filed a Title II application for disability and disability insurance benefits as well as a Title XVI application for supplemental security income, alleging total disability beginning on December 15, 2007. [Tr. 138]. Plaintiff was 48 years of age at the alleged disability date, [Tr. 111; 138], and

4

is a high school graduate and has completed a trade school course in Carpentry. [Tr. 38]. Plaintiff has past work experience in the Navy as a machinist mate, and in construction, as a laborer, machine operator, post office maintenance worker, and worker who removes hazardous waste. [Tr. 39; 353]. Plaintiff claims he has become disabled and unable to work due to schizophrenia, anxiety disorder, and mental and emotional problems. [Tr. 352].

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff requested a hearing, which took place on August 24, 2010. [Tr. 138]. ALJ Cam Oetter denied Plaintiff's claim on September 23, 2010. [Tr. 135]. Plaintiff sought review with the Appeals Council, which remanded the case on October 25, 2011. [Tr. 153]. ALJ Ronald Kayser heard the case on remand, conducting a hearing on September 4, 2012. The ALJ heard testimony from Plaintiff, medical expert Dr. Doug McKeown, and the vocational expert ("VE"), William Kiger. The VE testified that a person with an RFC equivalent to the ALJ's finding for Plaintiff could perform Plaintiff's past work as a material handler and machine operator. [Tr. 102].

After considering all the evidence in the administrative record, including the testimony of the plaintiff and the VE, the ALJ issued an unfavorable decision denying disability insurance benefits on September 21, 2012. [Tr. 9]. The Appeals Council

denied Plaintiff's request for review on January 28, 2014. [Tr. 1]. Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. §§405(g) & 1383(c)(3).

**IV. Analysis**

Plaintiff argues that the ALJ erred (1) by relying on the testimony of Dr. Doug McKeown and (2) in its handling of the medical opinion evidence regarding Plaintiff's psychological impairments.

> **1. The ALJ properly relied upon the testimony of Dr. McKeown.**

The ALJ called psychologist Dr. Douglas McKeown to testify as a witness at Plaintiff's hearing. [Tr. 79-99]. Plaintiff argues Dr. McKeown is not neutral, reliable, or credible, and contends, therefore, that it was improper for the ALJ to rely on his testimony. In support, Plaintiff cites to several cases in which ALJ Kayser called Dr. McKeown as a witness, Dr. McKeown then provided an opinion that was inconsistent with the treating and examining physician, and each time Dr. McKeown testified that the claimant's mental impairment was mild to moderate. *See Chambers ex rel. M.V.T. v. Astrue,* No. 1:10-CV-593, 2012 WL 510901, at *2 (S.D. Ohio Feb. 15, 2012); *Nesbitt v. Astrue*, No. CIV.A 308CV629-J, 2010 WL 989155, at *3 (W.D. Ky. Mar. 15, 2010); *Young v. Astrue*, No. CIV.A. 08-350-JMH, 2009 WL 1424426

6

(E.D. Ky. May 21, 2009); *Noble v. Colvin*, No. 5:12-CV-329-JMH, 2013 WL 3771496, at *4 (E.D. Ky. July 17, 2013).

"Although due process requires an impartial decision-maker in judicial and quasi-judicial proceedings, the court must start from the presumption that administrative adjudicators are unbiased, and that honesty and integrity exist among them." *Wells v. Apfel*, 234 F.3d 1271 (6th Cir. 2000) (unpublished case) (citing *Schwiker v. McClure,* 456 U.S. 188, 195-96 (1982)). It is the Plaintiff's burden to provide "convincing evidence that a risk of actual bias or prejudgment is present." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 856 (6th Cir. 2011) (quoting *Navistar Int'l Transp. Corp. v. U.S.E.P.A.,* 941 F.2d 1339, 1360 (6th Cir. 1991)).

In all but one of the cases cited by Plaintiff, the court found that Dr. McKeown's opinion was supported by substantial evidence and the ALJ's reliance on his testimony was not error. *Chambers*, 2012 WL 510901 at *4; *Young*, 2009 WL 1424426 at *5; *Noble,* 2013 WL 3771496 at *4.[2] The court in *Nesbitt* identified several problems with Dr. McKeown's testimony, but those problems related to Dr. McKeown's opinion on the particularities of the plaintiff's claim and the medical record in that case.

---

[2] In *Nesbitt*, the court remanded the case due, in part, to the ALJ's reliance on Dr. McKeown's opinion. The court found that Dr. McKeown had not reviewed the entire record, did not provide an explanation for his opinions, opined on the medication dosage prescribed to the claimant although he misread the dose and is not a medical doctor, and incorrectly articulated that the basis for GAF scores was self-reporting. *See Nesbitt*, 2010 WL 989155 at *4.

7

*Nesbitt*, 2010 WL 989155 at *4. The court did not comment upon or attack Dr. McKeown's credibility otherwise. *Id*. The Court also notes that Dr. McKeown holds a Ph.D. in clinical psychology and has many years of experience as a psychologist. [Tr. 291-92]. Accordingly, although there is a pattern in ALJ Keysar's use of Dr. McKeown as a medical expert, this pattern appears to generally support Dr. McKeown's credibility rather than diminish it and is, therefore, not enough to convince the Court that the ALJ's reliance on Dr. McKeown's opinions is cloaked in prejudgment or bias.

Furthermore, it is "for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses," but "such determinations must find support in the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing SSR 96-7P (S.S.A. July 2, 1996)).

The ALJ gives great weight to the opinion of Dr. McKeown, finding "his opinions are most consistent with the evidence as a whole." [Tr. 21]. In particular, the ALJ noted Dr. McKeown's conclusion that Plaintiff is "stable" and that Plaintiff has the "ability to work simple and some detailed job duties in a non-public work setting." [Tr. 21]. The Court agrees that Dr. McKeown's opinions are supported by the record.

First, the records from Bluegrass South Comprehensive Care and Boyle County Comprehensive Care, where Plaintiff received

8

primary treatment from Dr. Stuart Larson, support Dr. McKeown's conclusion. These records indicate that in spite of life stressors and occasional incidents of anger or aggression, Plaintiff was typically functioning at a moderate level and stable on medication, often described as doing well and with a pleasant affect. [Tr. 688; 740; 742; 744; 746; 764; 766; 821; 823; 889; 891; 893; 895-905].

Second, Plaintiff's own testimony supports Dr. McKeown's conclusion. At the hearing, Plaintiff testified that he does mowing and maintenance around the church and attends church each Sunday. [Tr. 52-53]. He keeps in contact with his family, especially his brother and mother and testified that he often visits them or calls them on the phone for hours at a time. [Tr. 65]. He stated that he is able to feed, dress, and bathe himself, do his own laundry and grocery shopping. [Tr. 54]. Plaintiff also stated that the medication he has been on since the 2006 attack has subdued his anger, although it causes him to feel sleepy. [Tr. 63-65]. These abilities and limitations are also similar to the Function Report he completed in May 2011. [Tr. 457-65].

Third, Dr. McKeown's opinion is consistent with the conclusion reached by the state agency physicians who opined that Plaintiff could sustain attention to complete repetitive object-focused tasks for two hour segments, work alone or

9

tolerate a small group of co-workers in a non-public setting, and adapt to routine changes. [Tr. 691; 697; 716].

Plaintiff attacks Dr. McKeown's conclusion by noting the fact that Plaintiff was admitted for treatment at mental hospitals on five occasions on court order. [Plaintiff's Brief, DE 12 at 4].[3] The fact that Plaintiff was court ordered to seek treatment on five occasions over approximately four years does not, in and of itself, indicate that Plaintiff is incapable of work with the limitations described by the ALJ in the RFC. Also, the circumstances surrounding at least one of the court orders was that Plaintiff had been off medication for six weeks, [Tr. 718], and in another instance in 2010, Plaintiff was admitted to Eastern State because he self-reported, calling the police to take him to the hospital because we was not feeling well. [Tr. 785]. Furthermore, the discharge reports from these institutions indicate that after treatment and an adjustment to medication in several instances, Plaintiff was discharged exhibiting good concentration, judgment, and affect. [Tr. 550; 623; 646; 661; 788; 807]. This supports Dr. McKeown's conclusion that these

---

[3] Plaintiff fails to cite to the record in support of his argument, although the Court's review of the record indicates Plaintiff was court ordered to seek treatment after expressing anger in his doctor's office in 2006, [Tr. 621], and was admitted by court order on a few other instances as well. [Tr. 549 (reasons for court order unexplained)]; [Tr. 645, ("having feelings about hurting others")]; Tr. 656 (making verbal threats to harm others")]; [Tr. 718, being off medication after having been in jail].

10

visits, essentially, helped to "stabilize" the Plaintiff. [Tr. 84].

Additionally, at one point in his testimony, Dr. McKeown supports his conclusion that Plaintiff is "stable" by suggesting that Plaintiff's anger is amenable to counseling. Plaintiff argues that Dr. McKeown states no basis for this statement and no other physician supports this theory. On the contrary, counseling or therapy is recommended, or at least counseling appointments are mentioned, on multiple occasions throughout the medical record. [*See e.g.*, Tr. 625; 647; 661; 752-60]. The fact that Dr. McKeown mentions counseling, therefore, does not in and of itself reduce his credibility.

Finally, Plaintiff also notes Dr. McKeown's reliance on Plaintiff's church activity to support his opinion that Plaintiff can sustain steady employment. Yet, it is perfectly acceptable to consider a claimant's social activities when evaluating the claimant's assertion of pain or ailment. *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 532 (6th Cir. 1997)). Here, Dr. McKeown acknowledged Plaintiff could sustain employment in a small, non-public setting, much like Plaintiff's activities at church. It was reasonable for Dr. McKeown to rely on this information.

Contrary to the Plaintiff's assertion, the ALJ did not adopt Dr. McKeown's testimony "word for word" but relied upon it because it was consistent with the medical record as a whole. Indeed, on the Court's review of the record, Dr. McKeown's onions are supported by the record. Thus, the ALJ's determination of his credibility, and use of his testimony at the hearing on the matter, is free of error.

**2. The ALJ properly weighed the medical opinion evidence.**

The ALJ assigned great weight to the non-examining medical expert Dr. McKeown and assigned significant weight to the opinions of the non-examining state agency medical consultants. The ALJ assigned little weight to treating physician Dr. Larson's opinion and consultative examiner Dr. Fishkoff, and assigned "some weight" to the opinion of consultative examiner Dr. Cabezas.

Plaintiff argues that the ALJ improperly weighed this opinion evidence. First the Court will address the weight assigned to Dr. Larson, the treating physician. "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). The ALJ may

12

assign less weight to a treating source, but in so doing must provide specific reasons. *Id*. Here, the ALJ assigned little weight to Dr. Larson's opinion that Plaintiff was disabled from a psychiatric standpoint because it was not supported by the records from Dr. Larson's treatment, which indicated that Plaintiff denied significant problems, and appeared to be handling medication well and in a stable condition. [Tr. 20]. The ALJ's reasons are clearly and specifically provided, and they are supported by substantial evidence. [Tr. 688; 740; 742; 744; 746; 764; 766; 821; 823; 889; 891; 893; 895-905]. The Court finds no error.

Similarly, the Court finds no error in the ALJ's weighing of the opinions of consultative examiners Drs. Fishkoff and Cabezas. Dr. Cabezas opined Plaintiff's ability to tolerate work stresses would be "rather limited", [Tr. 643], and Dr. Fishkoff found Plaintiff had several serious impairments. [Tr. 880-81]. The ALJ determined that these conclusions were not consistent with the medical record. [Tr. 21]. Notably, these opinions are inconsistent with the conclusions of the state agency physicians who opined that Plaintiff, although with limitation, was not disabled. [Tr. 691; 697; 716]. "State agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). The ALJ's

13

decision to assign less weight to the consultative examiner's opinions is supported by the opinions of the state agency physicians, as well as the rest of the medical record. Accordingly, the Court finds no error in the weighing of the medical opinion evidence.

**V. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [DE 12] be, and the same hereby is, **DENIED**; and

(2) that Defendant's Motion for Summary Judgment [DE 13] be, and the same hereby is, **GRANTED**.

This the 14th day of April, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

14